UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
UNITED STATES OF AMERICA,           )
                                    )
        v.                          ) Criminal Action No. 10-234 (RWR)
                                    )
WINSTON MCCALLUM                    )
                                    )
        Defendant.                  )
_____    )

### MEMORANDUM OPINION AND ORDER

Defendant Winston McCallum went to trial charged in a two-count superseding indictment with unlawful possession with intent to distribute 28 grams or more of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(iii), and unlawful possession with intent to distribute 28 grams or more of cocaine base within 1000 feet of a school, in violation of 21 U.S.C. § 860(a).  McCallum successfully moved for a mistrial when he discovered that the government failed to disclose certain statements of government witnesses before the defense cross-examined those witnesses.  McCallum now moves to dismiss the indictment on the ground that the Double Jeopardy Clause bars retrial or, in the alternative, moves for reconsideration of the pre-trial order denying his motion to suppress evidence.  Because McCallum has not established that the government's series of disclosure violations was intended to provoke McCallum into seeking a mistrial, double jeopardy does not bar retrial.  In addition, the belatedly disclosed evidence does not change the

-2-

determination to deny the motion to suppress, thus McCallum's motion will be denied.

The government moves in limine to preclude McCallum from introducing at retrial evidence of complaints against the police officer witnesses and also moves in limine to preclude McCallum from introducing opinion and reputation evidence about those witnesses.  Because the complaints lacked probative or impeachment value, and the circumstances surrounding the complaints do not support a reasonable belief that the allegations in the complaints are true, McCallum will not be permitted to elicit on cross-examination the fact that complaints were filed or what the complaints alleged.  Finally, in the absence of a specific proffer by McCallum of a foundation for potential character witnesses, a ruling on the admissibility of opinion and reputation evidence will be deferred.[1]

## BACKGROUND

On July 28, 2010, Officers Alphonso Matos and Ismael Chapa of the Metropolitan Police Department ("MPD") were driving in a squad car shortly after midnight in an area known for having a

_____

[1] At a March 21, 2012 hearing on the motions mentioned above, McCallum's separate motion in limine for reconsideration of an evidentiary ruling made at trial was granted in part and denied in part.  At retrial, McCallum will be permitted to cross-examine Metropolitan Police Department Officer Alphonso Matos, in accordance with the limitations imposed at the hearing, about testimony Matos gave at an unrelated criminal proceeding in the District of Columbia Superior Court.

high incidence of narcotics trafficking and intoxicated people.
According to the officers' pre-trial testimony, which was
credited during hearings on February 11, 2011 and June 6, 2011,
the officers saw McCallum on a ledge at the front entrance of an
apartment building, and he was leaning forward, as if he were
asleep or intoxicated.  The officers got out of their car to
check on McCallum, and Chapa positioned himself between McCallum
and the building, at the top of a series of steps of the landing
in front of the apartment building.  McCallum became aware of the
officers' presence, and began to run toward the door of the
building.  McCallum took between one and three steps, and then
Matos called out for him to stop.  Once McCallum stopped, the
officers attempted to corral him, and he began to move his arms
and shift his shoulders from one side to another.  The officers
handcuffed McCallum using two sets of interlocking handcuffs.
When McCallum was secured in the handcuffs, Matos asked him if he
had anything illegal on him, and McCallum answered that he had
cocaine.  Because the two interlocking sets of handcuffs
permitted McCallum some limited mobility, he was able to move his
hand to his right front pants pocket, and a zip bag containing
crack cocaine fell from his pocket.  McCallum was arrested and
charged with unlawful possession with intent to distribute crack
cocaine.

-4-

McCallum moved to suppress statements and tangible evidence.
At the evidentiary hearing on the motion in February 2011, Matos
was the government's only witness.   The government failed to
provide the defense, before defense counsel's cross-examination
of Matos, with a transcript of Matos's previous grand jury
testimony regarding the events leading to McCallum's arrest.[2]
During a recess at the hearing and while conferring with
government counsel, defense counsel noticed the transcript on
government counsel's desk and government counsel then provided it
to the defense.   Defense counsel was then permitted additional
cross-examination of Matos based on potential inconsistencies
between his testimony at the suppression hearing and his previous
testimony before the grand jury.   McCallum's motion to suppress
was granted as conceded as to evidence recovered from a search of
his apartment conducted following his arrest, but the motion to
suppress as to evidence seized from the defendant's person and
the motion to suppress the defendant's statements at the scene
were denied.

Thereafter, defense counsel contacted government counsel to
inquire whether the grand jury testimony of Chapa, who had not
testified at the February 2011 suppression hearing, contained
exculpatory material.   Government counsel in turn disclosed to

_____

[2] Defense counsel deems this the first in a series of
disclosure violations precluding retrial.

-5-

McCallum a transcript of Chapa's grand jury testimony.  McCallum

then filed a motion to reopen the suppression hearing, arguing

that the government had violated its <u>Brady</u> obligations in not

disclosing Chapa's grand jury testimony earlier and that the

testimony presented an account of defendant's arrest that was

inconsistent with Matos's account, undercutting the conclusion

that the officers possessed reasonable suspicion for stopping

McCallum.[3]  The motion to reopen the suppression hearing was

granted, and at a hearing in June 2011, McCallum's counsel cross-

examined Officer Chapa regarding the newly disclosed information.

The court reaffirmed its denial of the motion to suppress, as to

evidence seized from defendant's person and as to defendant's

statements on the scene.

Before trial, McCallum subpoenaed from the Metropolitan

Police Department information regarding complaints against the

officers who had arrested him.  The government moved to quash the

subpoena.  At a hearing on the government's motion, and in

response to the government's representation that no relevant or

exculpatory information existed, the court directed the

government to inquire further with the entities that maintain

police complaints regarding the existence of potentially

responsive material.  The government then disclosed certain

---

[3] Defense counsel deems the government's failure to provide
this transcript before the suppression hearing the second in a
series of disclosure violations precluding retrial.

-6-

information to the court for *in camera* review,[4] including written
summaries of statements concerning McCallum's arrest made to MPD
Internal Affairs by Chapa on August 15, 2011 and by Matos on
August 17, 2011.   The court ordered the government to disclose
those summaries to the defense.   The government provided them to
the defense on the morning of trial.[5]  Also on the morning of
trial, the government disclosed to the defense a "property book"
completed by Matos detailing the evidence recovered from the
scene of defendant's arrest.[6]

Trial began in December 2011.   While defense counsel cross-
examined Matos about inconsistencies between Matos's trial
testimony and his prior statements to Internal Affairs, the
officer asserted that the written summaries inaccurately conveyed
what he had told Internal Affairs and that recordings made of the
statements would confirm his account.   The government had not
disclosed to the defense the recordings of the officers'
statements to Internal Affairs nor disclosed that they existed.

---

[4] The government's *ex parte*, *in camera* submission has been
filed under seal.

[5] Defense counsel deems the failure to disclose these
statements before the suppression hearing the third in a series
of disclosure violations precluding retrial.

[6] Defense counsel deems the failure to disclose the property
book before the suppression hearing the fourth in a series of
disclosure violations precluding retrial.

-7-

Since the government had promised to provide all Jencks[7] material 10 days before trial, McCallum moved to strike the testimony of both officers or, in the alternative, for a mistrial.[8]  Over the government's opposition, the court declared a mistrial but found that the government's misconduct was not willful or intentional.

In February 2012, shortly before retrial was set to begin, the government submitted to the court for *in camera* inspection seventeen complaints filed with the independent[9] Office of Police Complaints ("OPC") against Matos and Chapa.[10]  Seven against Matos were in open status and the rest had been closed.  The court reviewed all of the complaints and found that fourteen complaints bore no allegations that the officers planted narcotics evidence, had no probative value as other act evidence under Federal Rule of Evidence 404(b) or as to truthfulness under Rule 608(b), and otherwise were not material to preparing the defense, see Fed. R. Crim. P. 16(a)(1)(E)(i), or to McCallum's guilt.  Nor were most of the open allegations, even if proven, of

---

[7] The Jencks Act, 18 U.S.C. § 3500, requires the government to disclose to the defense prior statements made by a testifying government witness concerning the subject of the witness's direct examination.

[8] Defense counsel deems this violation of <u>Jencks</u> the fifth in a series of disclosure violations precluding retrial.

[9] <u>See</u> D.C. Code §§ 5-1102, 5-1105.

[10] The government's *ex parte*, *in camera* submission has been filed under seal.

-8-

the type that would likely risk generating a criminal prosecution
or any internal MPD discipline that could cause Matos to want to
curry favor with prosecutors.  The court did order three
complaints against the officers for allegedly falsely accusing
individuals of possessing drugs disclosed to the defense.[11]  In
closed Complaint 10-0146, H.B. alleged that he was falsely
arrested after police, including Chapa, claimed to find in H.B.'s
car drugs that were not there.  H.B. alleged that he had gotten
out of the car and was threatened by police with a citation for
leaving the windows down when he returned, that the police asked
for permission to search his car, and that they searched it
anyway when he refused.  H.B. alleged that he did not have drugs
in the car.  The government produced a D.C. Superior Court record
reflecting that H.B. was charged with possessing a controlled
substance based on the arrest and ultimately pled guilty to the
offense.  (Govt.'s Mot. in Limine to Preclude Evidence Concerning
Police Complaints, Ex. 1.)  In closed Complaint 10-0385, D.G.
alleged that he was sitting on his porch when Chapa approached
and said that D.G. fit the description of a suspect and that
Chapa then arrested him, took drugs off another person, and put
the drugs on D.G.  The government produced a D.C. Superior Court

_____

[11] Defense counsel deems the government's failure to disclose
before the suppression hearing these three complaints and the
seven open complaints to be the sixth and seventh, respectively,
in a series of disclosure violations precluding retrial.

record reflecting that D.G. was charged with possessing cocaine, marijuana, and drug paraphernalia as a result of the arrest and ultimately pled guilty to the offenses.  (Id., Ex. 2.)  In open Complaint 12-0034, E.S. alleged that he called emergency services when his brother tried to assault him, and that when police, including Matos, arrived on the scene, they arrested him instead of his brother for assault and possession of marijuana.  He asserted that he did not have marijuana on his person.  The government represented that "the case was 'No Papered' when reviewed for prosecution by the screening attorney because, among other things, the police could not determine who was the initial aggressor and the suspect had a good defense."  (Id. at 4.)[12]

McCallum now moves to dismiss the indictment, arguing that a retrial is barred by the Double Jeopardy Clause.  Defendant argues that the government has violated its obligations to timely disclose exculpatory materials, prior witness statements and documents.  McCallum contends that the violations constitute a pattern of intentional government misconduct and that the misconduct has prejudiced his ability to litigate the case.  In

---

[12] McCallum does not contest the government's representations regarding the three complaints, but states that "[a]lthough two of these individuals subsequently entered a guilty plea in order to avoid a sentence of incarceration (the charges against the third individual were not pursued by the government), each maintains that the charges against him were false." (Def.'s Opp'n to Govt.'s Mot. in Limine to Preclude Evidence Concerning Police Complaints at 2.)

the alternative, McCallum asks the court to reconsider and grant
his motion to suppress the tangible evidence taken from his
person.  McCallum argues that reconsideration is warranted
because subsequently produced evidence, particularly the
recording of Matos's statements to Internal Affairs, casts doubt
on Matos's testimony at the February 11, 2011 suppression hearing
that McCallum reached into his pocket, despite the fact that his
hands were handcuffed behind his back, and that a ziplock of
crack cocaine fell out.  McCallum also contends that additional
evidence reflecting inconsistences in Chapa's testimony about how
the officers handcuffed McCallum casts doubt on Chapa's testimony
at the motions hearing in June 2011.  Finally, McCallum argues
that the MPD property book, disclosed to the defense after the
suppression ruling, reveals that the crack cocaine allegedly
recovered from McCallum's person was actually recovered from
McCallum's apartment.  The government argues that it did not
intentionally provoke McCallum into seeking a mistrial and
contests the defendant's interpretation of the subsequently
disclosed evidence, maintaining that reconsideration of the
suppression ruling is not warranted.

The government filed a motion in limine to preclude evidence
concerning complaints against Chapa and Matos.  The government
argues that the information is not probative of the officers'
character for truthfulness and that use of the complaints would

be unduly prejudicial.  McCallum opposes and argues that the fact that there are several open complaints against Matos is a proper subject of cross-examination in order to demonstrate Matos's motive to shape his testimony against McCallum in order to curry favor with the government.[13]  Defendant further represents that "[defense] [c]ounsel also has spoken to a fourth individual who submits that Officer Matos arrested him and falsely accused him of possessing drugs."  (Def.'s Opp'n to Govt.'s Mot. in Limine to Preclude Evidence Concerning Police Complaints at 2.)  Finally, the government has filed a motion in limine to preclude opinion and reputation evidence concerning government witnesses Matos and Chapa.

## DISCUSSION

I.   DOUBLE JEOPARDY BAR TO RETRIAL AFTER MISTRIAL

When an initial trial terminates after jeopardy has attached but before judgment, the reasons for the premature termination determine whether retrial is barred.  Retrial is generally permitted only where the government establishes "manifest necessity."  Arizona v. Washington, 434 U.S. 497, 505 (1978).  The manifest necessity standard, however, is not applied in circumstances where a mistrial is declared on defendant's own

---

[13] McCallum concedes that he cannot seek to admit the complaints as extrinsic evidence.  (Def.'s Opp'n to Govt.'s Mot. in Limine to Preclude Evidence Concerning Police Complaints at 2.)

-12-

motion.  In the D.C. Circuit, "[t]he rule that a mistrial on
defendant's motion generally does not bar retrial is firmly
established." <u>United States v. Jamison</u>, 505 F.2d 407, 411 (D.C.
Cir. 1974).  "Such a motion by the defendant is deemed to be a
deliberate election on his part to forgo his valued right to have
his guilt or innocence determined before the first trier of
fact." <u>United States v. Scott</u>, 437 U.S. 82, 93 (1978); <u>see also</u>
<u>Jamison</u>, 505 F.2d at 410 (describing mistrials on defendants'
motions as "that category which has most consistently been held
not to bar further proceedings").  "[T]he policy of the Double
Jeopardy Clause, weighed as it always must be against the
interest of the state in pursuing criminal prosecutions to their
conclusions, is simply not thought to require that a defendant be
free of further prosecutions when it was he, and not the judge or
the prosecutor, who sought to have the original prosecution
discontinued." <u>Jamison</u>, 505 F.2d at 412.

The rule is not categorical.  The D.C. Circuit recognized
that "a judge or prosecutor should not be free to have one trial
disbanded and another convened by intentionally committing errors
so prejudicial to the defendant that he is forced to seek a
mistrial; and, indeed, the Supreme Court has made it clear that
in such a case of 'judicial or prosecutorial overreaching,'
reproseution might well be barred." <u>Id.</u> at 411 (quoting <u>United</u>
<u>States v. Jorn</u>, 400 U.S. 470, 485 & n.12 (1971)).  The Supreme

Court articulated the controlling standard governing retrial
following mistrial on defendant's motion in <u>Oregon v. Kennedy</u>,
where it held that "[o]nly where the governmental conduct in
question is *intended to 'goad'* the defendant into moving for a
mistrial may a defendant raise the bar of double jeopardy to a
second trial after having succeeded in aborting the first on his
motion." <u>Oregon v. Kennedy</u>, 456 U.S. 667, 676 (1982) (emphasis
added); <u>see also</u> <u>United States v. Dinitz</u>, 424 U.S. 600, 611
(1976) ("The Double Jeopardy Clause does protect a defendant
against governmental actions *intended to provoke* mistrial
requests and thereby to subject defendants to the substantial
burdens imposed by multiple prosecutions.") (emphasis added).
Mere negligence on the part of the government is not enough.
<u>See, e.g.</u>, <u>United States v. DiSilvio</u>, 520 F.2d 247, 250 (3rd Cir.
1975) (stating that retrial was not barred where defendant
successfully moved for mistrial because indictment was defective
due to government's negligence).  Indeed, "[p]rosecutorial
conduct that might be viewed as harassment or overreaching, *even
if sufficient to justify a mistrial on defendant's motion* . . .
does not bar retrial absent intent on the part of the prosecutor
to subvert the protections afforded by the Double Jeopardy

-14-

Clause." <u>Oregon v. Kennedy</u>, 456 U.S. at 675-76 (emphasis added).[14]

McCallum argues that the court should use the "manifest necessity" standard, placing the burden on the government to justify retrial, rather than the prosecutorial intent standard. In particular, McCallum argues that because it was the government's misconduct that caused the defense to request the mistrial, this case should be viewed as one in which the mistrial was at the government's behest. But <u>Oregon v. Kennedy</u>, a case in which the prosecutor's misconduct did precisely that, <u>see</u> 456 U.S. at 669 (discussing facts of case, where prosecutor on redirect of expert witness had described the defendant as "a crook," prompting defendant to successfully move for mistrial) squarely provides the controlling precedent in such circumstances. Defendant argues that retrial is nonetheless barred because, having been deprived of relevant exculpatory

---

[14] <u>Oregon v. Kennedy</u> was a plurality opinion, but a majority of the justices endorsed the prosecutorial intent standard as the most appropriate, and manageable, standard for assessing whether a retrial is available after a mistrial is declared on defendant's motion. <u>See</u> <u>Oregon v. Kennedy</u>, 456 U.S. at 675 (concluding that "a standard that examines the intent of the prosecutor, though certainly not entirely free from practical difficulties, is a manageable standard to apply"); <u>id.</u> at 679 (Powell, J., concurring) ("I join the Court's opinion holding that the *intention* of a prosecutor determines whether his conduct, viewed by the defendant and the court as justifying a mistrial, bars a retrial of the defendant under the Double Jeopardy Clause.") (emphasis in original).

evidence, he did not knowingly waive his double jeopardy rights when he moved for a mistrial.

The D.C. Circuit, however, has rejected the theory that a defendant-initiated mistrial should be judged according to the principles of waiver.  In <u>Jamison</u>, 505 F.2d at 413, the court reasoned that were it to "treat mistrial motions as waivers of double jeopardy protection . . . [d]efendant would . . . be protected from multiple prosecutions brought about not by the government but by the errors or misjudgments of his own counsel[,]" and concluded that "this goes too far, and hence we decline to decide the double jeopardy effect of mistrials by reference to the rules of waiver."  Defense counsel's arguments regarding her reasons for seeking mistrial, albeit as an alternative remedy to striking the officers' testimony, show that counsel was engaged in a careful weighing of the pros and cons of the option.  Counsel explained that her determination to move for a mistrial was informed by her belief that "she had exposed every weakness she could find in the government's case," and "knew that if a retrial was held, the government would have the advantage of knowing the defense and these weaknesses."  (Def.'s Mot. to Dis. Indmt. at 17.)  Counsel nonetheless concluded that mistrial was the better alternative.  Counsel argues that had she had the information regarding the prior complaints against the officers, she would have moved forward with cross-examination on the officers' character for truthfulness and would not have requested

a mistrial.  (Id.)  For reasons that are explained below,
evidence regarding the complaints will be precluded on retrial.
In any event, considerations of the type recounted regarding the
benefits of proceeding with the same jury or seeking retrial are
quintessential strategic judgments of counsel and, even where
those judgments are colored by the conduct or misconduct of
government counsel, they remain the defendant's own
determinations absent a showing that the prosecutor intended his
conduct to provoke the determination to seek a mistrial.

Applying the Oregon v. Kennedy test then, the question is
whether the prosecutor goaded McCallum into requesting a
mistrial.  In considering this inquiry, the case law that is
discussed above focuses on the prosecutor's actions at trial,
rather than over the course of the entire litigation.  In
addition, "[b]ecause 'subjective' intent often may be
unknowable," reliance on "the objective facts and circumstances
of the particular case" may guide the analysis.  Oregon v.
Kennedy, 456 U.S. at 679-80 (Powell, J., concurring).

Here, the first two instances of misconduct relate to Brady
violations with respect to defendant's presentation of evidence
at the suppression hearing.  The second two instances fault the
government for providing potentially exculpatory Jencks material
on the morning before trial began.  It is the fifth incident --
the government's failure to produce before trial the oral
recordings of Matos's and Chapa's written statements to Internal

-17-

Affairs -- that could most closely qualify as misconduct that provoked McCallum to move for a mistrial.  Upon consideration of the parties' representations regarding the government's late discovery of the recordings and prompt efforts thereafter to produce the recordings to the defendant, however, the court did not find that there was any intentional withholding of Jencks material by the government, and did not find any willful conduct on the part of the prosecutor.  Rather, the court characterized the Jencks violation as unintentional and unfortunate.  The government, moreover, expressly, and apparently genuinely, objected to the motion for mistrial and proposed reopening cross-examination of the officers instead.  The defendant does not explain why the prosecution would have wanted a mistrial in the circumstances.  Given McCallum's arguments that the third, fourth, and fifth misconduct incidents (and the post-trial sixth and seventh incidents, as well) had prejudiced the defendant's ability to mount a successful defense at trial, it is entirely unclear why the government would have wanted to terminate a trial in which it enjoyed the presumptive advantage resulting from the asserted cumulative prejudice to McCallum.  Arguably, the four pre-trial instances of misconduct might provide a basis for inferring that the failure to provide the recorded statements was intentional.  But the <u>Oregon v. Kennedy</u> standard focuses not, or at least not only, on whether the misconduct was intentional, but on whether the prosecutor intended the misconduct to goad the

-18-

defendant into seeking a mistrial.  Because the facts here
indicate that the prosecutor's conduct was neither intentional
nor intended to provoke a mistrial, retrial of McCallum is
permitted.

II.  RECONSIDERATION OF RULING DENYING MOTION TO SUPPRESS

Courts in this district have uniformly assumed their
authority to entertain motions for reconsideration in criminal
cases.  See, e.g., United States v. Coughlin, 821 F. Supp. 2d 8,
17-18 (D.D.C. 2011) (collecting cases).  One line of cases
applies the standard applicable to motions to alter or amend a
final judgment under Federal Rule of Civil Procedure 59(e), see,
e.g., United States v. Libby, 429 F. Supp. 2d 46, 46-47 (D.D.C.
2006), under which a movant may prevail by identifying an
intervening change of controlling law, the availability of new
evidence, or the need to correct a clear error or prevent
manifest injustice.  Other cases apply the "as justice requires"
standard for reconsideration of interlocutory orders.  Coughlin,
821 F. Supp. 2d at 18 (internal quotation marks omitted).  That
standard asks whether reconsideration is warranted under the
totality of the circumstances, including such factors as "whether
the court has patently misunderstood a party, has made a decision
outside the adversarial issues presented to the court by the
parties, has made an error not of reasoning, but of apprehension,
or where a controlling or significant change in the law or facts
has occurred since the submission of the issue to the court."

<u>Ficken v. Golden</u>, 696 F. Supp. 2d 21, 35 (D.D.C. 2010) (internal
quotation marks and alterations omitted).

Under either standard, the availability of new evidence
bearing on the reliability of the testimony given by government
witnesses at the suppression hearing -- particularly the
officers' statements to internal affairs -- entitles McCallum to
reconsideration of the ruling on his motion to suppress.
However, the alleged inconsistencies brought to light by the
recordings of Matos's and Chapa's statements (Def.'s Notice of
Filing Add'l Exs. to Def.'s Mot. to Dis. Indmt. ("Def.'s Add'l
Exs."), Ex. C; Def.'s Reply, Ex. E) do not alter the
determination to credit the officers' account of how they
retrieved narcotics from McCallum's person.  Defendant details
the series of allegedly inconsistent statements in his reply
brief.  (Def.'s Reply to Govt.'s Resp. Mem. in Opp'n to Def.'s
Mot. to Dis. Indmt. at 13-14.)  Given that the statements are
drawn from three different proceedings over a period of several
months, the statements appear to reflect differences in word
choice and emphasis rather than any obvious inconsistency.  The
strongest argument for inconsistency is Matos's recorded
statement, to MPD internal affairs, that the officers put
McCallum in two pairs of handcuffs "because he say he has
something with his hip and he couldn't get in the car, we said,
we make you comfortable because he's a big guy."  (Def.'s Add'l
Exs., Ex. C at 21:08.)  Defendant maintains that this statement

demonstrates that "Mr. McCallum was not placed into two pairs of handcuffs until the officers tried to put him in the police car -- long after Mr. McCallum supposedly reached into his pocket [and the zip locks of cocaine fell out]." (Def.'s Reply to Govt.'s Resp. Mem. in Opp'n to Def.'s Mot. to Dis. Indmt. at 14-15.) Although Matos's statement might be read as defendant suggests, it may also be read to state general reasons for why two handcuffs were employed rather than to indicate the exact moment in time McCallum was handcuffed in the manner described. The internal affairs investigator asked Matos only why the officers used two handcuffs. (Def.'s Add'l Exs., Ex. C at 21:06.) She did not ask precisely when the officers put them on. The government also noted, and McCallum does not appear to contest, that the officers removed and re-handcuffed McCallum at least once to enable him to sign a consent form, indicating that the officers' prior statements about handcuffing McCallum may have referred to different points in time.

Neither does the subsequently disclosed property book filled out by Matos (Def.'s Add'l Exs., Ex. B) call into question the determination to credit the officers' testimony. McCallum attaches significance to the fact that the first property book entry, reflecting that cash was recovered from defendant's person as a result of the search outside the building, states the cash was "taken from" McCallum and lists an address of "1414 Upshur Street NW," while the subsequent entries, reflecting recovery of

narcotics, state the narcotics were "taken from" McCallum but
list an address of "1414 Upshur Street NW *105*" (emphasis added).
McCallum maintains that the inclusion of the apartment number
(105) in the latter entries indicates that the narcotics were
recovered from the apartment.  (Def.'s Add'l Exs. at 1.)  The
slight inconsistency in the address entries does not discredit
the testimony offered by both Matos and Chapa that narcotics were
recovered from defendant's person when defendant was seated
outside the apartment building.[15]  The difference between the
entries is insufficient to outweigh the largely consistent
testimony of the two officers regarding the recovery of narcotics
from defendant's person.[16]

---

[15] The government has submitted a sworn affidavit from Matos
who asserts that "[t]he entries in the property book in no way
reflect, or are intended to reflect, the exact location where the
defendant was positioned when evidence was recovered from him,
and it does not reflect, and it was not intended to reflect, the
exaction [sic] location where any of the evidence was recovered,
at the scene on July 28, 2010."  (Govt.'s Resp. Mem. in Opp'n to
Def.'s Mot. to Dis. Indmt., Ex. 1.)

[16] McCallum also argues for reconsideration of the court's
ruling that the officers did not commit a Miranda violation when
they conducted a Terry stop of him.  (Def.'s Mot. to Dis. Indmt.
at 8 n.1; Def.'s Reply to Govt.'s Resp. Mem. in Opp'n to Def.'s
Mot. to Dis. Indmt. at 15-17.)  McCallum contends that the court
erred by applying a categorical rule that Terry stops do not
warrant Miranda warnings.  Defendant's request to reconsider the
Miranda ruling would affect the admission only of defendant's
statements, not of the narcotics allegedly recovered from his
person since the "fruit of the poisonous tree" doctrine does not
apply when the fruit of a Fifth Amendment violation is tangible
evidence.  United States v. Patane, 542 U.S. 630, 637, 641 (2004)
(reasoning that since Miranda warnings are prophylactic, a
failure to give them is not alone a Fifth Amendment violation,
and that potential violations of a defendant's Fifth Amendment

III. ADMISSIBILITY OF EVIDENCE OF POLICE COMPLAINTS

The D.C. Circuit has recognized repeatedly that "bias is always a relevant subject for cross-examination." United States v. Lin, 101 F.3d 760, 768 (D.C. Cir. 1996). The Circuit has acknowledged that "defense counsel cannot have a foundation in fact for all questions asked on cross examination and . . . a well reasoned suspicion that a circumstance might be true is sufficient." United States v. Fowler, 465 F.2d 664, 666 (citing United States v. Pugh, 436 F.2d 222, 224 (D.C. Cir. 1970)). Cross-examining counsel, however, "must have a reasonable basis for asking questions on cross-examination which tend to incriminate or degrade the witness and thereby create an unfounded bias which subsequent testimony cannot fully dispel." United States v. Sampol, 636 F.2d 621, 658 (D.C. Cir. 1980). "[T]he questioner must be in possession of some facts which support a genuine belief that the witness committed the offense or the degrading act to which the question relates." Fowler, 465 F.2d at 666. Counsel therefore must demonstrate that "the proposed line of cross-examination follow[s] a lead reasonably suggested by other facts in evidence." Lin, 101 F.3d at 768.

---

rights "occur, if at all, only upon the admission of unwarned statements into evidence at trial"). Reconsideration of the Miranda ruling is not warranted in any event, as the ruling was made not in reliance on a categorical rule but on the circumstances surrounding the Terry stop of McCallum.

-23-

In <u>United States v. Wilson</u>, 605 F.3d 985 (D.C. Cir. 2010),
the D.C. Circuit addressed defendants' appeal of their
convictions of various narcotics crimes on the grounds that the
government committed a <u>Brady</u> violation when it failed to disclose
evidence about the internal investigation, and resulting
suspension without pay, of a police officer who had been a
government witness.  The court, agreeing that disclosure was
required, acknowledged that "based upon her suspension, [the
officer] could have been motivated to testify falsely against
appellants in order to curry favor with the government," and that
this motive could be argued to the jury with regard to "the fact
that she was being investigated at all," regardless of the
subject matter of the investigation.  <u>Id.</u> at 1006.  The court,
however, noted that a high risk of potential prejudice counseled
against cross-examination regarding the specific nature of the
investigation:

> Even assuming information about the subject matter of
> the investigation was probative of bias, the district
> court would properly have excluded cross-examination
> pursuant to Rule 403 because "its probative value [wa]s
> substantially outweighed by the danger of unfair
> prejudice." Fed. R. Evid. 403.  As the district court
> concluded, the "prejudice to this officer given the
> uncertainty of the [allegations] is quite high, the
> prejudice to her career and her credibility is quite
> high." Mar. 27, 2006 *Ex Parte* Tr. at 10.  That risk of
> prejudice would have substantially outweighed the
> minimal probative value of the evidence.

<u>Id.</u> (alterations in original).  The court moreover reaffirmed
that "'the mere *filing* of a complaint [against a witness] is not

probative of truthfulness or untruthfulness.'" <u>Id.</u> at 1005 (D.C.
Cir. 2010) (quoting <u>United States v. Morrison</u>, 98 F.3d 619, 628
(D.C. Cir. 1996) (emphasis in original) (finding no abuse of
discretion where trial court sustained an objection to a cross-
examination question put to a government witness asking if
someone had earlier filed a court complaint against her)).  In
<u>Wilson</u>, the D.C. Circuit emphasized that cross-examination
"[w]ithout additional evidence of wrongdoing beyond bald
assertions" and "based on unproven allegations" is impermissible.
<u>Wilson</u>, 605 F.3d at 1005.  <u>Cf.</u> <u>United States v. Whitmore</u>, 359
F.3d 609, 614 (D.C. Cir. 2004) (concluding that a defendant
should have been allowed to cross-examine a police officer
witness about a "D.C. Superior Court judge's finding that [the
officer] had lied" in an unrelated criminal trial).

    The Seventh and Eleventh Circuits have both considered
specifically the propriety of cross-examination regarding
complaints against police officers.  <u>See</u> <u>United States v. Holt</u>,
486 F.3d 997, 1000-02 (7th Cir. 2007); <u>United States v. Taylor</u>,
417 F.3d 1176, 1178-81 (11th Cir. 2005).  In <u>Holt</u>, the defendant
sought to cross-examine two police officer witnesses, one of whom
had received a suspension for conduct occurring several years
before the defendant's arrest and both of whom "[b]ased upon an
unrelated complaint . . . were . . . reprimanded for neglect of
duty."  <u>Holt</u>, 486 F.3d at 1001.  The Seventh Circuit affirmed the
trial court's decision to allow the defense to ask the officer

-25-

witness who had been suspended whether "he had ever engaged in a particular course of conduct," id. at 1001,[17] but to prohibit asking about the discipline the officer had received, id. at 1002. With regard to the complaints, the Seventh Circuit reasoned that the key factor determining whether cross-examination regarding complaints was proper is its bearing on truthfulness. The circuit court accordingly affirmed the trial court's decision to exclude questioning regarding the complaints because "th[e] evidence [of police complaints] was not even relevant . . . because it did not bear on the[] [officers'] characters for truthfulness"). Id. In Taylor, the Eleventh Circuit addressed a case in which the defendant wanted to cross-examine a government witness regarding prior citizens' complaints against him for, among other things, allegedly planting evidence, even though the allegation of evidence fabrication had been determined to be unfounded by the internal affairs investigation. A separate complaint alleging brutality indicated that the officer was "under investigation." The defendant argued that the complaints were relevant to prove the officer was biased, had a tendency for being untruthful, and thus may have planted drugs on the defendant. Taylor, 417 F.3d at 1178-79.[18] The Eleventh

_____

[17] The facts of the case do not make clear what precise conduct led to the suspension.

[18] McCallum does not accurately characterize the facts of Taylor, contending that "[i]n Taylor, the defendant sought only to admit or refer to the complaints, rather than cross-examine

Circuit, however, upheld the district court's ruling to preclude cross-examination because the complaints were unproven and there was no evidence the officer had been disciplined for the conduct. Further, the court noted that the defendant "failed to proffer the testimony of any witness who might testify that [the officer] had engaged in any of the alleged acts but instead chose to simply refer to Internal Affairs documents to support his theory that [the officer] had a history of planting evidence on arrestees and had a character for untruthfulness and racial bias." Id. at 1180 (emphasis omitted).  Both Taylor and Holt support the proposition that cross-examination about complaints or the conduct underlying them is improper unless there is some basis for inferring the soundness of the allegations against the officers (as, for example, in Holt where the alleged misconduct had led to the officer's suspension).

With regard to the three complaints disclosed to the defense, the circumstances thus far do not support a reasonable belief that the allegations in the complaints are true.  Two of the three complainants subsequently pled guilty to possessing the substances that they had previously alleged had been planted.

---

regarding the substance of the complaints."  (Def.'s Opp'n to Govt.'s Mot. in Limine to Preclude Evidence Concerning Police Complaints at 4 n.1.)  The facts are clear, however, that the defendant "advised the district court that he *intended to cross-examine* [the police officer witness] regarding prior citizens' complaints against him." Taylor, 417 F.3d at 1178 (emphasis added).

-27-

Although the third complainant, who alleged that marijuana had been planted on him, was not prosecuted, McCallum has not proffered evidence tending to establish the truth of the allegations made by that complainant or the others aside from the contention that each of the complainants "maintains that the charges against him were false." (Def.'s Opp'n to Govt.'s Mot. in Limine to Preclude Evidence Concerning Police Complaints at 2.) Without more, these are the type of "unproven allegations," Wilson, 605 F.3d at 1005, that are unsuited as evidence probative of the character for truthfulness of the witnesses.[19]

With regard to the seven open complaints against Matos, as well, the current record reflects "[no] additional evidence of wrongdoing beyond bald assertions." Wilson, 605 F.3d at 1005. Unlike in Wilson, where the officer was actually under investigation and indeed suspended for misconduct, and the district judge was found properly to have allowed the defendant to cross-examine the officer regarding her knowledge of the investigation in order to demonstrate a motive to curry favor, the current record does not reflect that Matos has been subject

_____

[19] With regard to McCallum's representation that there is a "fourth individual who submits that Officer Matos arrested him and falsely accused him of possessing drugs" (Def.'s Opp'n to Govt.'s Mot. in Limine to Preclude Evidence Concerning Police Complaints at 2), McCallum has not proffered sufficient facts from which to determine the propriety of conducting cross-examination of Matos about this individual.

-28-

to disciplinary action.[20]  Arguably, where complaints have yet to
be found proven or not proven, their open status might be
construed as reflecting an investigation of the officer.  While
the OPC investigates the circumstances of filed complaints to
determine whether they are founded, the probative value of
inquiring into Matos's potential bias to testify favorably to the
prosecution in order to avoid discipline is slight where, as
here, the facts alleged in the open complaints do not demonstrate
any credible threat of such discipline.[21]  For these reasons,
McCallum may not elicit on cross-examination the fact that any of
these complaints has been filed with the OPC against Matos or
Chapa or what a complaint alleged.  The government's motions to
preclude evidence of police complaints will be granted subject to
the government's update about the status of the seven open
complaints.

IV.  ADMISSIBILITY OF OPINION AND REPUTATION EVIDENCE

    In order to offer reputation evidence under Federal Rule of
Evidence 608(a), "a party must establish that the character
witness is qualified by having an 'acquaintance with [the
witness],' his 'community,' and 'the circles in which he has

----

    [20] However, the government will be directed to update the
status of the seven open complaints.

    [21] Wilson suggests that there may also be some risk that such
questioning could prejudice Matos and that such prejudice could
be undue given the uncertainty of the allegations.  Wilson, 605
F.3d at 1006.  Given the nature of the open complaints, though,
that risk is not determinative here.

moved, as to speak with authority of the terms in which generally
[the witness] is regarded.'" <u>Whitmore</u>, 359 F.3d at 616 (quoting
<u>Michelson v. United States</u>, 335 U.S. 469, 478 (1948)).
Reputation testimony, however, need not be derived from the
witness's residential community and a character witness need not
physically reside in that community. <u>Id.</u> at 617 n.3. "[T]he
foundational requirement for *opinion* evidence regarding a
witness's character for truthfulness is less stringent than that
for *reputation* evidence." <u>Id.</u> at 617 (emphasis in original). A
witness's opinion testimony must be based on underlying facts
that demonstrate that the opinion is rationally based on the
first-hand perception of the witness and would be helpful to the
jury in evaluating the subject's truthfulness. <u>Id.</u> at 618.

    The government asks the court to preclude character witness
testimony unless and until McCallum proffers sufficient facts or
evidence that establish that any potential character witness has
a sufficient knowledge about an officer's reputation in the
community for truthfulness or untruthfulness, or proffers a
sufficient basis to offer an opinion about an officer's
reputation for truthfulness. McCallum has acknowledged his
obligation to present a foundation for such testimony. In the
absence of any specific proffer to call character witnesses,
ruling on the government's motion will be deferred. Upon a
proffer, the relevant factors to assess will include the

proximity in time of the witness's contact, the extent of the witness's contacts with the community, the extent of the witness's interaction with the officer whose character is being impeached, and the factual support for the testimony offered. Id. at 616-18.

CONCLUSION AND ORDER

Double jeopardy does not bar retrial in this case, and the denial of McCallum's motion to suppress is reaffirmed.  Subject to the government's update about the status of the seven open complaints, cross-examination eliciting the fact that OPC complaints were filed or their contents will not be permitted at retrial.  Accordingly, it is hereby

ORDERED that the defendant's motion [58] to dismiss the indictment be, and hereby is, DENIED.  It is further

ORDERED that the government's motions [59, 63], insofar as they seek to preclude cross-examination eliciting the fact that the OPC complaints were filed or their contents, be, and hereby are, GRANTED subject to the government's notice updating the status of the seven open complaints against Matos.  The government is directed to file that notice by September 4, 2012. It is further

ORDERED that a ruling on the government's motion [64] to preclude opinion and reputation evidence be, and hereby is, DEFERRED until the retrial.  It is further

-31-

ORDERED that the parties appear for a scheduling conference on September 10, 2012 at 10:15 a.m. in order to set a date for the retrial.

SIGNED this 13th day of August, 2012.

_____/s/_____
RICHARD W. ROBERTS
United States District Judge